City of Pittsburgh, Commission on Human Relations, Appellant v. Duquesne Light Company, Appellee.

260

Submitted on briefs, December 6, 1979, to Judges WILKINSON, JR., ROGERS and BLATT, sitting as a panel of three.

*Thomas D. MacMullan,* for appellant.

*Robert K. Morris,* of *Reed, Smith, Shaw & Mc-Clay,* for appellee.

OPINION BY JUDGE BLATT, March 28, 1980:

The Commission on Human Relations of the City of Pittsburgh (Commission) appeals here from a decision of the Court of Common Pleas of Allegheny County which sustained the appeal of the Duquesne Light Company (Duquesne) from the Commission determination that Duquesne had illegally discriminated against a black employee, George Smith, on account of his race.

Mr. Smith was first employed by Duquesne in April of 1973. After bidding on the position of Radiation Control Technician (RCT) in accordance with

the applicable provisions of the collective bargaining agreement and after passing an entrance examination, Mr. Smith entered a program calling for over six months of class instruction as part of the training for the job. Although he initially failed both the oral and written tests given at the conclusion of the program of in-class instruction, he was given two additional opportunities to pass these tests and ultimately did so. He then began on-the-job training in September 1974 under the supervision of a Mr. Joseph Kosmal. After approximately two months, Mr. Kosmal informed his supervisor that Mr. Smith was not performing satisfactorily and that it appeared that Mr. Smith would not qualify for the job. At that time the union steward was informed of the situation and the union requested that Mr. Smith be given another chance and that records of his future job performance be kept. Duquesne agreed to the request. In January 1975, another meeting was held between representatives of the union and Duquesne and once again Mr. Kosmal expressed his opinion that Mr. Smith did not qualify for the job of RCT. The union once again requested that Mr. Smith be given another chance with his performance once again documented. This was done. Mr. Smith's performance, however, continued to be unsatisfactory and in February 1975 he was disqualified for the regular appointment to the job in question but remained with Duquesne in another capacity. On January 13, 1975, he filed a complaint with the Commission, which he subsequently amended on March 4, 1975. The complaint as amended charges Duquesne with racial discrimination in employment in violation of Section 8(a) of the Pittsburgh Human Relations Ordinance[1] (Ordinance).

[1] Section 8(a) of Ordinance No. 75 of 1967, *as amended*, provides:

After a hearing held before three Commissioners, the Commission concluded that Mr. Smith had been illegally discriminated against, and its conclusion was based on the following findings:

1. There were no black RCTs at the time Smith sought to be qualified for the position.

2. Smith was the first black person to undergo the RCT training qualification process.

3. Duquesne subjected Smith to 'headwinds' in order to discourage him and to prevent him from qualifying for the RCT position. These headwinds consisted of:

a) prolonging Smith's training but not that of any white trainee;

b) not making training manuals as readily available to Smith as to others;

c) requiring Smith to perform repetitive tests and to do over again certain things that he had already done properly;

d) not providing Smith equivalent training and assistance to do over again certain things that he had already done properly;

e) allowing other trainees overtime but not Smith;

f) requiring Smith to perform a special emergency qualification exercise that others were not required to perform;

g) permitting a discriminatory atmosphere to exist by permitting certain racially discriminatory names and remarks;

---

It shall be an unlawful employment practice . . .

(a) For any employer to refuse to hire any person or otherwise discriminate against any person with respect to hiring, tenure, compensation, promotion, discharge or any other terms, conditions or privileges directly or indirectly related to employment because of race, color, religion, ancestry, national origin or place of birth.

h) only keeping documentation on Smith and no white trainee.

4. Conditioning Smith's qualification as a RCT upon the subjective evaluations of supervisors.

5. Having no standardized qualification procedures in order to assure that whites and blacks are required to undergo the same qualifications in order to obtain the sought after position.

The common pleas court reversed the Commission's order on appeal after concluding that the Commission's findings were not supported by substantial evidence. This appeal followed.

Duquesne contends here as it did before the Commission and the court below that the Commission had no jurisdiction over this case because the Ordinance is applicable only to actions taken within the city limits of Pittsburgh while the alleged discrimination in the instant case took place in Shippingport, Pennsylvania, the site of the Duquesne plant at which Mr. Smith worked. The Commission found, as did the court below, that the decision to disqualify Mr. Smith was made at Duquesne's headquarters in Pittsburgh and was therefore covered by the Ordinance. There is substantial evidence in the record to support this conclusion and we will therefore affirm it.

After an exhaustive review of the record, however, we conclude that the findings of the Commission are insufficient to support its conclusion that Section 8(a) of the Ordinance was violated.

Where the court below does not take any additional testimony or receive any additional evidence, of course, our scope of review is limited to a determination as to whether or not the Commission abused its discretion or committed an error of law. *Pittsburg Press Employment Advertising Discrimination*

*Appeal,* 4 Pa. Commonwealth Ct. 448, 287 A.2d 161 (1972). We note, therefore, that the Commission's first two findings relate to statistical evidence introduced to establish that Duquesne's general employment practices were discriminatory. And, while we agree that statistics showing the racial composition of the work force may be probative and relevant evidence to be considered in determining whether or not an employer had a discriminatory motive, they are nevertheless not determinative of that issue. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Moreover, standing alone, as they do here, they could not support a finding that Duquesne discriminated against Mr. Smith individually because of his race.

A more significant Commission finding, however, is that Duquesne subjected Mr. Smith to what it termed "headwinds" in order to prevent him from qualifying for the RCT position. We have thoroughly examined the record for evidence to support this finding, and, while there is sufficient evidence to support finding No. 3 (with the exception of 3(b), and 3(g) pertaining to a discriminatory atmosphere), we do not believe, that the evidence is sufficient to support the conclusion that Duquesne attempted to discourage or prevent Mr. Smith from qualifying. While it is true that Mr. Smith was treated differently from other trainees, the unrebutted testimony was to the effect that this difference in treatment was in some instances at the request of Mr. Smith's union and in other instances the result of a continued effort on the part of Duquesne to help Mr. Smith qualify. In fact, the record is replete with examples of a concerted effort by Duquesne employees to give Mr. Smith every opportunity to qualify for the position.

With respect to the finding that Duquesne permitted a discriminatory atmosphere to exist, substan-

tial evidence in the record is clearly lacking to support this conclusion. The record clearly shows that Duquesne took steps to remove racial slurs from walls and in addition held a meeting with employees to warn that any writing of such words would not be tolerated. Even if a discriminatory atmosphere did exist, there is no evidence that Duquesne "permitted" it.

The Commission's finding that Mr. Smith's qualification was conditioned upon a subjective evaluation by his supervisors might be questioned because the use of subjective evaluation can be improper, but this is only if there is some other evidence of discrimination. In the present case it is clear that much of Mr. Smith's testing was objective, and it is equally clear that he did not do well on those tests. As a matter of fact, the record indicates that he was the only trainee ever to fail a particular test twice. With respect to subjective on-the-job evaluations, it is undisputed that, to the extent that the evaluations were subjective, they applied to all trainees and were in most cases accompanied by the use of objective criteria. The record simply does not support a conclusion that such subjective evaluations were improperly employed with respect to Mr. Smith.

With respect to the Commission's last finding that there was no standardized qualification procedure, the record is clearly to the contrary. The testimony shows that the qualification process was as well defined as possible and applied equally to Mr. Smith and others.

We believe therefore that the order of the lower court must be affirmed.

ORDER

AND Now, this 28th day of March, 1980, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.

Judge DiSALLE did not participate in the decision in this case.